# Illinois Official Reports

## Appellate Court

***People v. Littleton*, 2014 IL App (1st) 121950**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ERNEST LITTLETON, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1950 |
| Filed | June 26, 2014 |
| Rehearing denied | August 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentence for robbery were upheld over his contentions that other-crimes evidence was improperly admitted, that the admission of other testimony violated the confrontation clause and the hearsay rule, that defense counsel was ineffective in failing to demand a speedy trial and failing to seek the suppression of eyewitness identifications and that defendant's guilt was not established beyond a reasonable doubt, since the trial court did not abuse its discretion in admitting evidence of other crimes establishing defendant's *modus operandi*, the improper admission of hearsay testimony of two retired police officers concerning defendant's prior offenses was harmless in view of the overwhelming evidence of defendant's guilt, there was no indication the outcome would have been different if defense counsel had demanded a speedy trial or moved to suppress the identifications, and the identification testimony of an eyewitness was sufficient to establish defendant's guilt. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-2972; the Hon. William H. Hooks, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Rachel M. Kindstrand, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Jocelyn M. Schieve, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Howse and Justice Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, defendant Ernest Littleton was found guilty of the robbery of Audrey Schenck and sentenced to 25 years' imprisonment. Defendant raises several issues on appeal: (1) the trial court erred in admitting evidence of other crimes; (2) the trial court erred in admitting testimony that violated the rule against hearsay and the confrontation clause; (3) trial counsel was ineffective in failing to make a speedy trial demand and failing to move to suppress eyewitness identifications; and (4) the State failed to prove him guilty beyond a reasonable doubt. We conclude that evidence of defendant's pattern of robbing elderly women on the southwest side of Chicago was properly admitted to prove his *modus operandi*. While inadmissible hearsay was introduced at defendant's trial, we find that the admission of that testimony was harmless. We further find that defendant's attorney did not render ineffective assistance in failing to make fruitless motions and that the State presented sufficient evidence to prove defendant guilty beyond a reasonable doubt. We affirm defendant's conviction.

¶ 2                                    BACKGROUND

¶ 3 Defendant was indicted in the November 17, 2008, robbery of Dorothy Jokubaitis and the December 4, 2008, robbery of Audrey Schenck. He was first tried in the Jokubaitis robbery and was acquitted. Defendant was then tried in the Schenck robbery. Schenck, however, had died before trial. The trial court admitted Schenck's testimony from the Jokubaitis trial as evidence in the Schenck trial.

¶ 4                                      Pretrial

¶ 5 The State moved to admit other-crimes evidence, specifically, evidence of Jokubaitis' robbery, as well as evidence of defendant's 1994 robberies of Rosella Defenbaugh and Lucille Zaye and 1997 robberies of Ana Mireles and Mary Moore. The State argued that the evidence would show defendant's *modus operandi*, identity, and a common scheme or

design. Defendant responded that the evidence was unduly prejudicial, and not probative of the State's proffered reasons for admitting the evidence. The trial court granted the State's motion, finding that the evidence would not be unfairly prejudicial and would show "the absence of innocence of the state of mind, the presence of criminal intent, *modus operandi*, intent, identity, and *** a common scheme and design."

¶ 6 The State also filed a motion to admit prior testimony by four deceased witnesses pursuant to section 115-10.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.4 (West 2010)). In particular, the State sought to introduce transcripts of Schenck's testimony in the Jokubaitis case, as well as Defenbaugh's, Zaye's, and Moore's preliminary hearing testimony in their respective cases. The trial court granted the State's motion with respect to Schenck's testimony, but denied it with respect to the transcripts of Defenbaugh's, Zaye's, and Moore's testimony.

¶ 7 Trial–Robbery and Theft of Audrey Schenck

¶ 8 The State presented a certified copy of Schenck's death certificate before reading her testimony from the Jokubaitis trial into the record. Schenck testified that, on the morning of December 4, 2008, she drove to a Jewel grocery store at 6107 South Archer Avenue in Chicago, Illinois. She returned to her apartment building at 5839 South Harlem Avenue, noticing that the parking gate was broken and would not close. Schenck parked her car and was retrieving her groceries from her backseat when a man grabbed her throat and snatched her purse from her left shoulder. The man pulled her out of the car and pushed her toward the ground before fleeing. Schenck recalled that the man wore a dark jacket with a hood and had a dark complexion, but she remembered no other details.

¶ 9 Dawn Evans, an employee in Schenck's apartment complex, testified that she saw Schenck staggering and heard her say, "[H]e's got my purse." She followed the man until he went around a fence and into an adjacent parking lot. The robber held up the purse and said, "[Y]ou want this," to which Evans said, "Yes." The robber then said, "[N]a," and fled in a white minivan. Evans testified that a photograph of the rear of defendant's car resembled the car she saw the robber enter that day. She provided police with a description of the offender, including that he wore a brown parka. Evans identified defendant as the robber in court.

¶ 10 Officer Foley testified that, on January 4, 2009, he responded to a call regarding a suspicious black male driving a white sport utility vehicle (SUV) near 58th Street and Neva Avenue. Foley stopped the SUV and recorded defendant's name, address, date of birth, and license number. He further testified that he was aware of a pattern of robberies involving a black male in his thirties or forties, and defendant "strongly resembled" the suspect. Foley relayed this information to his partner, Officer Prendkowski.

¶ 11 Officer Kevin Prendkowski testified that, after speaking with Officer Foley, he spoke with Detective Gary Wisniewski about arranging a photo array in relation to the pattern of robberies. He later learned from Wisniewski that a positive photo array identification had been made. On January 18, 2009, Prendkowski saw defendant driving a white Jeep in a grocery store parking lot at 63rd Street and Narragansett Avenue. Prendkowski followed defendant, who, in turn, was following a car driven by an elderly woman. Defendant lost track of the woman and pounded his hands on the steering wheel. Defendant then returned to the grocery store parking lot, where he drove in circles. Other officers arrived and arrested

defendant. When defendant exited his vehicle, he was wearing a brown puffy coat with white fur around the hood.

¶ 12      Detective Wisniewski testified that, on January 13, 2009, he showed a photo array to Dawn Evans, who identified defendant as Schenck's robber. After defendant's arrest on January 18, 2009, Evans viewed a lineup and identified defendant as the robber.

¶ 13                    Other-Crimes Evidence–2008 Robbery of Jokubaitis

¶ 14      The State presented Dorothy Jokubaitis as a witness over defendant's objection. She testified that, on November 17, 2008, she went to the Jewel at 6107 South Archer Avenue. As she drove home, she noticed a van following her. After she retrieved the groceries from the trunk and backseat, she turned and saw a man in her garage standing only a foot away. The man said, "Give me your purse." A struggle ensued. Jokubaitis yelled for help, and the man punched her in the nose. She fell to the ground, and he fled with her purse and groceries. She was 68 years old at the time of the offense. She described the man to police as a black male, 35 to 40 years old, 5 feet 11 inches tall, wearing a cream-colored hat and brown jacket. She subsequently identified defendant in a lineup. She identified the defendant as the robber in court.

¶ 15                    Other-Crimes Evidence–1997 Robberies of Moore and Mireles

¶ 16      Officer Guy Habiak testified regarding two 1997 robberies to which defendant pled guilty. He stated that, on February 2, 1997, he was assigned to the robberies of Mary Moore and Ana Mireles. Habiak spoke to Officers Sneathan and Deheer that day, who told him that, after responding to a robbery at 5132 South Kenneth Avenue in Chicago, Illinois, and receiving a description of a male black in a grey coat with a large black purse, they found and arrested defendant. Defendant had a purse, $44, a grey, hooded jacket, and a $7,500 "advertisement check" made payable to Ana Mireles in his possession.

¶ 17      Habiak spoke to Moore, who said that a black male wearing a grey jacket grabbed her on the way home from a bakery, knocked her down, and took her purse. Moore could not see the offender's face. Moore's niece, Jennifer Krikvana, told Habiak that she observed the robbery through her front window. Krikvana later identified defendant as the robber at a police station.

¶ 18      Habiak also spoke with 79-year-old Ana Mireles, who said that, as she was returning from the grocery store, a man knocked her down from behind and took her purse, which contained a $7,500 advertisement check. Mireles never saw the man's face.

¶ 19      Later that day, Habiak spoke with defendant, who, after being read his *Miranda* rights, admitted to robbing a woman of her purse at 5132 South Kenneth Avenue. Defendant admitted that the $7,500 check was from a robbery he had committed several days earlier, in which he knocked a woman down from behind and took her purse.

¶ 20                    Other-Crimes Evidence–1994 Robberies of Defenbaugh and Zaye

¶ 21      Officer Howard Hatton testified regarding two 1994 robberies to which defendant pled guilty. Hatton spoke with Officer Contrarez, who stated that he curbed a light blue Oldsmobile that matched descriptions of a robber's car. Defendant stopped the car and fled on foot, but was eventually apprehended and found to have three sets of car keys.

¶ 22     Hatton spoke with 80-year-old Rosella Defenbaugh, who told him that, on August 10, 1994, she returned to her home from a trip to Edmar Foods, a grocery store, and parked in her garage. A black male exited a light blue car, entered her garage, knocked her to the ground, took her purse from inside her car, and fled. She subsequently identified defendant in a lineup.

¶ 23     Hatton also spoke with 77-year-old Lucille Zaye, who told him that, on August 12, 1994, she drove to the Edmar Foods parking lot, where a man knocked her to the ground, took her purse, and fled. She did not see the offender's face. Priscilla Pulido told Hatton that she witnessed the offense. She saw a black male in a light blue car pull into an alley behind the store, push Zaye to the ground, take her purse, and flee in his car. Pulido identified defendant in a photo array and lineup. Upon his arrest, defendant possessed keys belonging to both Zaye and Defenbaugh.

¶ 24                                    Defense Evidence
¶ 25     Berton Downing testified that, on December 4, 2008, defendant worked at the barbershop Downing owned. Downing recalled that defendant took a lunch break sometime between 11 a.m. and 1 p.m. that day. A receipt showed that defendant worked that day, but defendant's name did not appear on the receipt until 5:37 p.m.

¶ 26                                    Verdict and Sentence
¶ 27     The trial court found defendant guilty of theft and robbery of a victim over the age of 60. The court sentenced him to 25 years' imprisonment.

¶ 28                                        ANALYSIS
¶ 29     Defendant raises other-crimes evidence, hearsay, confrontation clause, ineffective assistance of counsel, and reasonable doubt claims on appeal. We first address the State's claim that defendant improperly included the Jokubaitis transcripts in the record on appeal.

¶ 30                                  The Record on Appeal
¶ 31     The State argues that the transcripts from the Jokubaitis trial were not before the trial court and are irrelevant to this appeal. The State is incorrect. The trial court stated that the Jokubaitis transcripts should be included in the record. After the State presented transcripts of Schenck's testimony in that case, the court responded, that "this matter will be taken up probably eventually on appeal." The court therefore asked the State to "refile it with the complete transcript, not just the relevant portions." The State responded, "You want the entire transcript, the trial transcript?" The court responded, "Yes, because when these things get prepared for appeal I would prefer that if they do go on appeal I would prefer [*sic*] that the whole transcript is provided." Thus, the trial court intended for the Jokubaitis transcripts to be included.

¶ 32     Additionally, given that the State used Jokubaitis' testimony as its primary other-crimes evidence, we believe that the inclusion of the transcripts from defendant's first trial is proper. See Ill. S. Ct. R. 323(a) (eff. Dec. 13, 2005) ("A report of proceedings may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated

in the record on appeal. The report of proceedings shall include all the evidence pertinent to the issues on appeal."). We now turn to defendant's contentions of error.

¶ 33                                              Other-Crimes Evidence

¶ 34        Defendant argues that the trial court erred in admitting other-crimes evidence, including testimony regarding the robbery of Jokubaitis, the 1994 and 1997 robberies, and an uncharged act that occurred immediately before his arrest. There was not, defendant argues, such a high degree of identity between Schenck's robbery and the others to support admission of this evidence as *modus operandi*. We find that there was a high degree of identity between the instant offense and the other crimes–specifically, a distinctive combination of location, victim, timing, method, and flight–and hold that the trial court did not abuse its discretion in admitting evidence of other crimes.

¶ 35        Other-crimes evidence is inadmissible if it is used to show a defendant's propensity to commit crimes. *People v. Heard*, 187 Ill. 2d 36, 58 (1999). It may be admitted for other purposes, such as proving a defendant's *modus operandi*, intent, motive, or absence of mistake. *People v. Pikes*, 2013 IL 115171, ¶ 11. Even where used for a permissible purpose, other-crimes evidence should not be admitted if its prejudicial effect outweighs its probative value. *Id.* The danger of other-crimes evidence is that, because of its persuasiveness, it may convince a jury to convict the defendant simply because he is a bad person. *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). "In a bench trial, this fear is assuaged; it is presumed that the trial court considered the other-crimes evidence only for the limited purpose for which it was introduced." *People v. Nash*, 2013 IL App (1st) 113366, ¶ 24.

¶ 36        In most cases, general areas of similarity will suffice for other-crimes evidence to be admitted for a purpose other than propensity. *People v. Wilson*, 214 Ill. 2d 127, 141 (2005). Where the prosecution offers other-crimes evidence to establish *modus operandi*, however, a higher degree of similarity between the facts of the charged offense and other offenses is required. *Id.* at 140. Specifically, to establish *modus operandi*, the State must show a " 'high degree of identity' " between the facts of the crime charged and the other offense. *People v. Cruz*, 162 Ill. 2d 314, 349 (1994) (quoting *People v. Illgen*, 145 Ill. 2d 353, 373 (1991)). The offenses "must share such distinctive common features as to earmark both acts as the handiwork of the same person." *Illgen*, 145 Ill. 2d at 373. *Modus operandi* denotes a pattern of criminality "so distinctive that separate crimes are recognized as the handiwork of the same wrongdoer." *Cruz*, 162 Ill. 2d at 349. Even where other-crimes evidence is offered to prove *modus operandi*, however, some dissimilarity between the crimes will always exist. *People v. Taylor*, 101 Ill. 2d 508, 521 (1984).

¶ 37        The admissibility of evidence rests within the trial court's discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). The trial court's decision will not be disturbed absent an abuse of discretion. *Id.*

¶ 38        Here, the trial court set forth its reasoning for admitting other-crimes evidence in a written order:

        "This Court *** considered proof of other-crimes evidence. *** This evidence was considered by this court strictly for the purpose of *modus operandi* and not for any other purpose. Specifically, this court noted that the defendant had previously targeted victims who: (1) were elderly women; (2) lived on the southwest side of

Chicago in a fairly narrow geographical area; (3) had recently left a grocery store or bakery; (4) were traveling in late morning to early afternoon; and, (5) had their purses forcefully taken from them. This court also noted that defendant had worn a brown Parka in the two most recent alleged robberies. Additionally, this court made a finding that the probative value of the admission of the other-crimes evidence outweighed any prejudice."

¶ 39    The trial court did not abuse its discretion in holding that other-crimes evidence could be admitted to establish *modus operandi*. Schenck, Jokubaitis, Moore, Mireles, Defenbaugh, and Zaye were all women, traveling alone, and in their late sixties, seventies, or early eighties. In each case, defendant's target traveled to a grocery store on Chicago's southwest side or nearby suburbs, often Edmar Foods or the Jewel located at 6107 South Archer Avenue. In each case, defendant approached the woman at her home, often while she unloaded groceries from her car. In each case, defendant knocked the woman to the ground, took her purse, and fled.

¶ 40    To be sure, each offense varied slightly from the others. Some of the victims returned home on foot, others in a car. One of the victims was returning from a bakery, not a full-service grocery store. In some cases defendant fled in a light blue car, in others, apparently on foot. Although there was evidence that defendant wore a brown coat in the more recent robberies, such evidence did not exist for the older robberies. Some dissimilarity will always exist, however. *Taylor*, 101 Ill. 2d at 521. Here, a pattern is unmistakable: defendant found elderly women traveling alone from one of a few geographically proximate grocery stores, knocked them down, took their purses, and fled.

¶ 41    Defendant compares this case to *People v. Howard*, 303 Ill. App. 3d 726 (1999). There, the State introduced evidence of another robbery. *Id.* at 727-28. In both cases, an offender approached a white male college professor from behind near the University of Illinois–Chicago campus at Van Buren Street. *Id.* at 731. A divided appellate court held that the trial court had erred in admitting this evidence, noting that that there was no evidence that the offender knew both men were college professors and there was nothing unique about a robber approaching a person from behind. *Id.* Further, Van Buren is a busy thoroughfare. *Id.* The court concluded that "[t]his is not a unique earmark but rather describes the prototypical armed robbery." *Id.*

¶ 42    The State contends that this case is similar to *People v. Jones*, 328 Ill. App. 3d 233 (2002). There, the trial court allowed the state to present evidence regarding two other robberies. *Id.* at 235. The defendant robbed all three people within a four-hour window in the same geographical area. *Id.* at 240. In two of the cases, the defendant covered his gun with a " 'dirty old yellow' kitchen towel." *Id.* at 241. Each person identified the defendant in a lineup. *Id.* at 240. In *Jones*, we held that the cases presented a sufficiently high degree of similarity to admit other-crimes evidence under the *modus operandi* exception. *Id.* at 241. We noted that, "[w]hile differences in the uncharged other crimes and the charged offenses exist[,] *** the similarities of these crimes, when viewed together, are sufficiently distinctive to support the inference the defendant was the robber in each case." *Id.*

¶ 43    We agree with the State that this case is more like *Jones* than *Howard*. Here, unlike in *Howard*, the State presented evidence of not one additional case, but five. In each case, defendant found a 68- to 82-year-old woman traveling alone to one of only a few southwest side grocery stores, approached the woman on her way home, knocked her down, took her

purse, and fled. Together, these cases form a distinct pattern of criminality. See *People v. Hansen*, 313 Ill. App. 3d 491, 506 (2000) ("In the absence of any one particular distinctive feature *** Illinois courts have found that a sufficient number of common features can form a distinctive combination sufficient to establish the existence of a *modus operandi*."). Defendant's choice of location, victim, and timing establishes a high degree of identity between the offenses, indicating that they were the handiwork of the same offender. In each case, defendant immobilized the victim and quickly fled. As we did in *Jones*, we recognize that the differences among the crimes exist. However, "these crimes, when viewed together, are sufficiently distinctive to support the inference the defendant was the robber in each case," and thus we cannot say that the trial court abused its discretion in admitting evidence of them. *Jones*, 328 Ill. App. 3d at 241.

¶ 44    Defendant also argues that the other-crimes evidence should have been excluded, because its prejudicial effect outweighed its probative value. Specifically, this evidence "unfairly bolstered Schenck's credibility where she could not identify the robber and was not subject to further examination because she was deceased."[1] As defendant acknowledges, identity was the primary issue at his trial. *Modus operandi* acts as circumstantial evidence of identity on the theory that crimes committed in a similar manner indicate that they were committed by the same offender. *People v. Quintero*, 394 Ill. App. 3d 716, 726-27 (2009); see also *People v. Tipton*, 207 Ill. App. 3d 688, 696 (1990) (*modus operandi* may be probative of the offender's identity); *People v. Howard*, 303 Ill. App. 3d 726, 730 (1999) ("The use of *modus operandi* evidence is especially proper when the defendant's identity is a central issue in the case."). The other-crimes evidence here did not unfairly bolster Evans' testimony. It was proper circumstantial evidence of defendant's identity as the offender that strongly corroborated Evans' identification. The evidence's probative value outweighed its prejudicial effect.

¶ 45    Defendant argues that, even if the evidence was relevant to prove *modus operandi*, the trial court failed to properly limit the scope of the other-crimes evidence. In particular, defendant claims that the State was allowed to elicit great detail about defendant's 1994 and 1997 arrests, including an attempt to flee custody and testimony that he kicked an officer. We recognize that a trial court must limit other-crimes evidence to the purpose for which it is admitted. *People v. Bennett*, 281 Ill. App. 3d 814, 827 (1996). Although some of these details were extraneous, they were relatively brief in comparison with the other testimony concerning the defendant's prior robberies. We must presume that the trial judge, acting as the trier of fact in this case, did not consider this irrelevant testimony. *People v. Robinson*, 368 Ill. App. 3d 963, 976 (2006). The trial judge's written findings, wherein he expressly stated that he considered the evidence solely for *modus operandi* purposes, also show that these extraneous details did not factor into its decision.

¶ 46    Defendant further contends that the trial court erred in allowing Officer Prendkowski to testify regarding defendant's pre-arrest behavior, as it was irrelevant and not admissible to show the circumstances of defendant's arrest or to show *modus operandi*. Prendkowski saw defendant follow an elderly woman from a grocery store parking lot before he lost sight of

---

[1]It is difficult to appreciate how this evidence could impact Schenck's credibility where the issue at trial was the identity of the offender. Schenck never identified defendant as the robber. The evidence could, however, enhance the credibility of Evans, who identified defendant.

her and pounded the steering wheel with his hands. Prendkowski's description was relevant to the circumstances of defendant's arrest. See, *e.g.*, *People v. McKibbins*, 96 Ill. 2d 176, 183 (1983) (description of robbery in progress was necessary to describe circumstances of defendant's arrest); see also *People v. Aguilar*, 396 Ill. App. 3d 43, 55 (2009) ("evidence of other crimes is admissible *** to show the circumstances surrounding defendant's arrest"). Nor did the testimony's prejudicial effect outweigh its probative value. Evidence of defendant's other acts was therefore admissible.

¶ 47                                                    Hearsay

¶ 48    Defendant argues that "[t]he testimony elicited from the retired police officers [Habiak and Hatton] should have been excluded as inadmissible hearsay that violated [his] right of confrontation." The confrontation clause and the rule against hearsay, while related, are not identical and should not be conflated. See *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Lilly v. Virginia*, 527 U.S. 116, 140-43 (1999) (Breyer, J., concurring). The confrontation clause provides a federal constitutional guarantee concerned only with the admission of testimonial hearsay, whereas hearsay rules are evidentiary rules developed in each state. *Crawford*, 541 U.S. at 68. We first address defendant's hearsay claim.

¶ 49    Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). Illinois courts apply an abuse-of-discretion standard when reviewing a trial court's decision regarding the admission of hearsay. *E.g.*, *id.*; *People v. West*, 158 Ill. 2d 155, 164-65 (1994). An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009).

¶ 50    The testimony at issue related to the robberies defendant pled guilty to in 1994 and 1997. As discussed above, the State used this testimony to prove defendant's *modus operandi*. The State introduced evidence of the 1997 robberies through Officer Habiak. Habiak testified to the statements he received from five people: Moore, Krikvana, Mireles, Officer Sneathan, and Officer Deheer. Habiak testified that Moore told him that a black man in a gray jacket knocked her down and took her purse, and that Krikvana identified defendant as that man. Habiak testified that Mireles told him that a man knocked her down and took her purse, which contained a $7,500 check. Habiak testified that Officers Sneathan and Deheer told him that they arrested defendant in response to Moore's robbery complaint and that he was in possession of a purse, $44, and a $7,500 check made out to Mireles. Habiak did not witness any of these events.

¶ 51    The State introduced evidence of the 1994 robberies through Officer Hatton. Hatton testified to the statements he received from four people: Defenbaugh, Zaye, Pulido, and Officer Contrarez. Hatton testified that Defenbaugh told him that defendant entered her garage, knocked her down, and took her purse. Hatton testified that Zaye told him that a man knocked her down in the parking lot of a grocery store and took her purse, and that Pulido told him that defendant was the man who robbed Zaye. Hatton testified that Officer Contrarez stopped defendant driving a car matching a description of the robber's car and that defendant fled. Hatton did not witness these events.

¶ 52    Defendant argues that Habiak's and Hatton's testimony recounting statements from these nine people constituted inadmissible hearsay. Hearsay is an out-of-court statement offered in

court to prove the truth of the matter asserted in the statement. *Caffey*, 205 Ill. 2d at 88. Conversely, "testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not hearsay." *People v. Banks*, 237 Ill. 2d 154, 180 (2010). Our supreme court has illustrated the distinction with the following example:

> "[W]itness A testif[ies] that 'B told me that event X occurred'. If A's testimony is offered for the purpose of establishing that B said this, it is clearly admissible–if offered to prove that event X occurred, it is clearly inadmissible ***." *People v. Carpenter*, 28 Ill. 2d 116, 121 (1963).

Hearsay statements are generally excluded because of the lack of opportunity to cross-examine the declarant. *People v. Peoples*, 377 Ill. App. 3d 978, 983 (2007). In this case, if the State used the out-of-court statements regarding the 1997 and 1994 robberies to prove that those robberies actually occurred, those statements were hearsay.

¶ 53    The State contends it did not use the statements to prove the truth of the matter asserted. Rather, the State argues, it used them to prove defendant's *modus operandi*. As we explained above, *modus operandi* is an exception to the rule that other-crimes evidence is inadmissible. *Pikes*, 2013 IL 115171, ¶ 11. Even if other-crimes evidence is otherwise admissible, however, it may still "be excluded because it is offered in the form of a hearsay statement that does not meet a recognized exception to the hearsay rule." *People v. Dabbs*, 239 Ill. 2d 277, 290 (2010); see also *People v. Patterson*, 2013 IL App (4th) 120287, ¶ 59 ("other-crimes evidence may also be excluded if *** offered in the form of a hearsay statement not meeting an exception to the hearsay rule"); *People v. Kinnett*, 287 Ill. App. 3d 709, 715 (1997) (testimony admitted under an exception to the bar on other-crimes evidence may still be barred as hearsay).

¶ 54    The State relies on *People v. Moss*, 205 Ill. 2d 139 (2001), and *People v. Lovejoy*, 235 Ill. 2d 97 (2009), in support of its contention that it did not use the statements regarding the 1994 and 1997 robberies to prove the truth of the matter asserted. In *Moss*, the defendant was convicted of the murder of his ex-girlfriend and her daughter while he awaited trial on charges that he sexually assaulted his ex-girlfriend's daughter. *Moss*, 205 Ill. 2d at 144. The State's evidence showed that the defendant instructed his mother and aunt to kill his ex-girlfriend and her daughter so that they could not testify against him in the sexual assault trial. *Id.* at 145-46. The State presented evidence of statements the daughter had made to her mother, to the police, and to a doctor describing the defendant's sexual assault. *Id.* at 154-56. Defendant averred that the evidence of these statements describing the sexual assault was inadmissible hearsay. *Id.* at 158-59.

¶ 55    The *Moss* court found that these statements were not used to prove the truth of the matter asserted, *i.e.*, that defendant had sexually assaulted his ex-girlfriend's daughter. *Id.* at 159-60. The court noted that the State's theory was that the defendant had ordered his mother and aunt to kill his ex-girlfriend and her daughter so that they would not testify against him regarding the sexual assault. *Id.* at 160. In other words, his motive to kill them was to prevent them from testifying. *Id.* The *Moss* court found, therefore, that the out-of-court accusations "were not offered to prove that the sexual assault actually occurred; they were offered to prove defendant's motive." *Id.*

¶ 56    In *Lovejoy*, the defendant was convicted of murdering his stepdaughter. *Lovejoy*, 235 Ill. 2d at 103. At the defendant's murder trial, the State introduced evidence of statements made

by defendant's stepdaughter to her mother, her neighbor, medical personnel, and the police accusing the defendant of sexually assaulting her. *Id.* at 132-35.

¶ 57    The *Lovejoy* court found that the defendant's stepdaughter's statements were not hearsay. *Id.* at 138-39. The defendant conceded that his stepdaughter's statements were used to prove that he had a motive to murder her. *Id.* at 132. The court noted that the statements were not used for the truth of the matter asserted, *i.e.*, that the defendant had sexually assaulted his stepdaughter. *Id.* Rather, the State simply used the statements to prove that the defendant had a motive to kill her and silence her accusations. *Id.* at 139. The court concluded that the statements were not hearsay. *Id.* at 138-39.

¶ 58    In both *Moss* and *Lovejoy*, the State used evidence of the victims' out-of-court statements accusing the defendants of sexual assault to prove the defendants' motives to kill the victims. In both cases, the State's theory was that the defendants killed their victims to avoid the consequences resulting from their victims' accusations. Regardless of the truth or falsity of the out-of-court accusations, the mere fact that the victims made them gave the defendants reason to fear that they would be punished for sexual assault. Even if the victims had been lying about the assaults, the defendants would have had a motive to kill them and prevent them from testifying. The relevance of the out-of-court statements of the victims did not hinge upon the truth of the victims' allegations; the relevance of those statements stemmed from the mere fact that the victims made the accusations. See Michael H. Graham, Graham's Handbook of Illinois Evidence § 800.2 (10th ed. 2010) ("[T]o the extent that an out-of-court statement is relevant simply because of the fact it was said, the statement is not [hearsay].").

¶ 59    In this case, however, the trial court considered the out-of-court statements as evidence of defendant's *modus operandi*, not defendant's motive. That fact distinguishes this case from *Moss* and *Lovejoy*. Evidence of a defendant's *modus operandi* serves to prove a defendant's identity. See *People v. Dupree*, 339 Ill. App. 3d 512, 520 (2003) ("[M]odus operandi evidence is not proper where identity is not at issue."); *Howard*, 303 Ill. App. 3d at 730 ("The use of *modus operandi* evidence is especially proper when the defendant's identity is a central issue in the case."). The reason is that, if one crime is committed in a unique way, it is more likely that a subsequent crime committed in the same way was done by the same person. *Illgen*, 145 Ill. 2d at 373. In order for testimony to be relevant to prove a defendant's *modus operandi*, the facts described by that testimony must have been true. If the facts were not true–if there was no unique pattern of crimes–then no *modus operandi* existed, and there is no support for the contention that this evidence suggests that defendant was the offender. Evidence proving a *modus operandi*, unlike evidence proving a motive, *must* be true to be relevant.

¶ 60    In this case, the trial court admitted the out-of-court statements of Moore, Mireles, Krikvana, Defenbaugh, Zaye, Pulido, Sneathan, Deheer, and Contrarez to prove that defendant had a *modus operandi* of robbing older women as they came home from the grocery store. The State used this evidence to prove that it was defendant who robbed Schenck. If the out-of-court statements describing the unique facts of the prior robberies were untrue, then defendant did not have the claimed *modus operandi*. If defendant did not have a *modus operandi*, evidence of the prior robberies would make it no more likely that defendant robbed Schenck. In sum, the truth of the matter asserted in the out-of-court statements–that defendant robbed Moore, Mireles, Defenbaugh, and Zaye–was *essential* to their being used

to prove defendant's *modus operandi*. We find the State's reliance on *Moss* and *Lovejoy* to be misplaced.

¶ 61    Our supreme court's decision in *People v. Cloutier*, 178 Ill. 2d 141 (1997), bolsters our conclusion. In *Cloutier*, the defendant was convicted of first-degree murder. *Id.* at 147. At the defendant's capital sentencing hearing, the State presented the testimony of a police detective who recounted conversations he had with two women who reported being attacked by the defendant. *Id.* at 149-50. Both of these women told the detective that the defendant forced them into his car, tore their clothes off, and showed them the body of his murder victim. *Id.* On appeal, the defendant argued that this testimony was inadmissible hearsay. *Id.* at 154. The State argued that it used the testimony to prove defendant's state of mind–"that [the] defendant displayed the victim's body *** in an effort to force them to 'submit to his wishes' "–not for the truth of the matter asserted. *Id.* at 155.

¶ 62    The *Cloutier* court found that the detective's testimony about his conversations with the two women was hearsay. *Id.* The court stated, "Unless the out-of-court statements by [the two women] were true, they could have no bearing on [the] defendant's mental state." *Id.* The court noted that, in order to prove that the defendant displayed the victim's body to compel the two women to comply with him, defendant actually had to have shown them the body. *Id.* Thus, the women's statements "necessarily depended on the truth of the matter asserted." *Id.*

¶ 63    In this case, like *Cloutier*, the statements at issue only bore on defendant's *modus operandi* insofar as they were true. Defendant would have had no *modus operandi* unless he had actually engaged in a series of robberies of older women as they returned home from the store. Habiak and Hatton's testimony about their conversations with Moore, Mireles, Krikvana, Defenbaugh, Zaye, Pulido, Sneathan, Deheer, and Contrarez would have had no bearing on defendant's *modus operandi* unless their statements describing the robberies were true. Yet, because this evidence was from police officers who did not witness the crimes, defendant could not test the truth of those statements through cross-examination at his trial. We find that the out-of-court statements of Moore, Mireles, Krikvana, Defenbaugh, Zaye, Pulido, Sneathan, Deheer, and Contrarez constituted hearsay.

¶ 64    Even if a statement is hearsay, it may be admissible if an exception to the rule against hearsay applies. Ill. R. Evid. 803, 804 (eff. Jan. 1, 2011); *Caffey*, 205 Ill. 2d at 88-89. The State does not argue that any established hearsay exception applies; it maintains only that the statements were not used to prove the truth of the matter asserted. The State cites no cases–nor have we found any–in which an Illinois court recognized *modus operandi* as an exception to the hearsay rule. For the reasons stated above, we decline to create an exception to the hearsay rule for evidence of a defendant's *modus operandi*.

¶ 65    We must still determine whether the erroneous admission of the hearsay evidence was harmless. The remedy for the erroneous admission of hearsay is reversal, unless the record clearly shows that the error was harmless. *People v. Miles*, 351 Ill. App. 3d 857, 867 (2004). "The admission of hearsay evidence is harmless error where there is no reasonable probability that the [trier of fact] would have acquitted the defendant absent the hearsay testimony." *People v. Nevitt*, 135 Ill. 2d 423, 447 (1990). The erroneous admission of hearsay evidence is harmless error "when it is merely cumulative or is supported by a positive identification and other corroborating circumstances." *People v. Prince*, 362 Ill. App. 3d 762, 776 (2005).

¶ 66    Courts consider three factors in determining whether an error was harmless: (1) whether the error contributed to the conviction; (2) whether the other evidence in the case overwhelmingly supported the conviction; and (3) whether the improperly admitted evidence was cumulative or duplicative of the properly admitted evidence. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). We consider each of these factors in turn.

¶ 67    With respect to the first factor, the admission of the hearsay evidence did not significantly contribute to defendant's conviction. The trial court's findings show that it "considered proof of other crimes" in making its decision. Yet the trial court discussed the properly admitted testimony of Evans, Jokubaitis, and Officer Foley in detail. The trial court did not discuss the individual testimony of the out-of-court declarants as probative of defendant's guilt. Instead, it simply referred to the "proof of other crimes" as a whole. Some of that "proof of other crimes"–Jokubaitis's prior testimony and defendant's admissions to Officer Habiak–was admissible. While the improper evidence may have contributed to defendant's conviction, its relative impact on the trier of fact appears slight.

¶ 68    As to the second factor, the other evidence in this case overwhelmingly supported defendant's conviction. Evans positively identified defendant as the robber after observing him for several minutes in broad daylight. At one point, Evans stood a few feet away from defendant and spoke to him face-to-face as he taunted her. Evans saw the robber get into a white car that resembled the rear of defendant's car. Evans identified defendant in a photo array, in a lineup, and in open court. One month after Schenck was robbed, Officer Foley saw defendant driving a white SUV in the same area, wearing a brown jacket similar to the one worn by Schenck's robber. Officer Prendkowski testified that, about one month after Schenck's robbery, he saw defendant follow an elderly woman from a grocery store, lose sight of her, then return to the grocery store parking lot.

¶ 69    The admissible evidence of defendant's *modus operandi* bolstered Evans' identification. Jokubaitis identified defendant as the man who punched her and took her purse when she arrived home from the grocery store. Although defendant had been acquitted of Jokubaitis' robbery, that fact did not preclude the court from taking her identification into account. See *Dowling v. United States*, 493 U.S. 342, 347-50 (1990) (evidence of prior offense, of which defendant was acquitted, could be considered to prove defendant's identity in a subsequent trial). Officer Habiak also testified that, when he questioned defendant, defendant confessed to robbing Moore and Mireles. That testimony was not hearsay. Ill. R. Evid. 801(d)(2) (eff. Jan. 1, 2011) (statement by party-opponent is not hearsay). Although defendant's confession to the 1997 robberies could not be used to prove his propensity to commit crimes generally, because the content of his statement established factual similarities to the instant offense, it served as additional evidence of his *modus operandi*, which corroborated Evans' identification.

¶ 70    Defendant's alibi evidence failed to contradict the State's evidence. Berton Downing testified that defendant was with him on the day of the robbery, but that defendant took a lunch break sometime between 11 a.m. and 1 p.m. Schenck's robbery occurred in the early afternoon. In sum, the evidence overwhelmingly established that defendant took Schenck's purse.

¶ 71    As to the third factor, the improper evidence of defendant's 1994 and 1997 robberies was largely cumulative of the properly admitted other-crimes evidence at trial. Jokubaitis testified that defendant robbed her while she returned from the same grocery store defendant followed

- 13 -

Schenck home from. Officer Habiak's testimony that defendant admitted to robbing both Moore and Mireles in 1997 was admissible as additional evidence of defendant's *modus operandi*, as it was neither hearsay nor used to prove defendant's propensity for criminality. The trial court used this evidence as proof of defendant's *modus operandi*, the same reason that the testimonial hearsay was used. Although the improperly admitted hearsay offered additional proof of defendant's *modus operandi*, it served the same purpose as the properly admitted evidence from Jokubaitis and Officer Habiak.

¶ 72 We need not reach defendant's claim that the admission of Habiak and Hatton's testimony violated his rights under the confrontation clause because, even if it did, we would likewise conclude that the error was harmless. See *In re E.H.*, 224 Ill. 2d 172, 180 (2006) ("[T]he appellate court *** must first consider whether it is necessary to consider [a] constitutional question [if] the court ha[s] already ruled admission of the evidence harmless."). We are mindful that "there is a somewhat higher bar for constitutional error than other trial error to be deemed harmless." *Id*; see *People v. Mullins*, 242 Ill. 2d 1, 23 (2011) ("Because a defendant's interests are heightened where constitutional error is at issue [citation], the burden of proof is on the State to show beyond a reasonable doubt that the constitutional error did not affect the outcome of the proceeding [citation]." (Internal quotation marks omitted.)). For the reasons stated above, however, we find that the erroneous admission of the hearsay evidence in this case was harmless under either standard.

¶ 73 Ineffective Assistance of Counsel

¶ 74 Defendant next contends that he was denied the effective assistance of counsel, where his attorney (1) failed to make a speedy trial demand, and (2) failed to move to suppress eyewitness identifications. The State responds that defendant was tried within the 120-day statutory period, and a motion to suppress would have been futile.

¶ 75 The right to counsel guaranteed by the United States and Illinois Constitutions includes the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, "[a] defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Manning*, 241 Ill. 2d 319, 326 (2011) (citing *Strickland*, 466 U.S. at 688). Under the first *Strickland* prong, a defendant must show that his trial attorney's performance was deficient. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). Under the second, a defendant must show that counsel's deficient performance undermined confidence in the trial's outcome. *Id.* We turn first to defendant's speedy trial claim.

¶ 76 Defendant argues that his attorney was ineffective, where she failed to make a speedy trial demand. Defendant raises both constitutional and statutory speedy trial concerns. Both the United States and Illinois Constitutions guarantee the right to a speedy trial. U.S. Const., amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial"); Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right *** to have a speedy public trial by an impartial jury ***."). To assess a constitutional speedy trial claim, we must look to the record in its totality to determine whether the defendant has enjoyed his constitutional right. *People v. Crane*, 195 Ill. 2d 42, 48

(2001). In part, we must examine four factors: the length of delay, reasons for delay, prejudice (if any), and defendant's assertion of his right. *Id.*

¶ 77    The statutory right to a speedy trial is not precisely equivalent to the constitutional right. *People v. Staten*, 159 Ill. 2d 419, 426 (1994). In Illinois, "[e]very person in custody *** for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he [or she] was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2010). Where, however, a person is in custody for more than one charge, he must be tried on the first charge within 120 days and on the second or subsequent charges within 160 days from the date of judgment in the first case. 725 ILCS 5/103-5(e) (West 2010). To succeed in a statutory speedy trial claim, a defendant must show that he was not tried within the statutory period, and he did not cause or contribute to the delay. *Staten*, 159 Ill. 2d at 426. When the parties agree, on the record, to a continuance, the delay is attributable to the defendant. *People v. Burchette*, 257 Ill. App. 3d 641, 657 (1993).

¶ 78    Defendant was arrested on January 18, 2009, for both the Jokubaitis and Schenck robberies. His trial in the Schenck case did not begin until August 31, 2011. In the interim, defendant was tried in the Jokubaitis case and also agreed to many continuances. According to the State, after accounting for the Jokubaitis trial and agreed continuances, 46 days of the speedy trial period passed before defendant was tried in this case. According to defendant's calculation, 52 days had passed. Under either calculation, defendant was tried within the statutory period. Defense counsel's performance cannot be adjudged deficient for her failure to make a futile speedy trial demand. *People v. Cordell*, 223 Ill. 2d 380, 392-93 (2006).

¶ 79    Although defendant was in custody for a significant amount of time prior to his trial in the instant case, that time was largely filled with discovery, pretrial motions, and trial in the Jokubaitis case. Nothing in the record shows that counsel was unreasonable in agreeing to these continuances or that the outcome of defendant's trial would have been different had counsel objected to them. Defendant has thus failed to show that his trial attorney was ineffective for failing to demand a speedy trial. *People v. Phyfiher*, 361 Ill. App. 3d 881, 887 (2005).

¶ 80    Defendant also claims that his trial counsel was ineffective for failing to move to suppress Evans' identification of him. The State responds that counsel's performance was not deficient, because a motion to suppress would not have been successful and defendant did not suffer prejudice. We agree that counsel was not ineffective because a motion to suppress defendant's identification would not have succeeded.

¶ 81    "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade*, 388 U.S. 218, 228 (1967). Illinois mandates that photo array suspects "not appear to be substantially different from 'fillers' or 'distracters' in the *** photo spread, based on the eyewitness' previous description of the perpetrator, or based on other factors that would draw attention to the suspect." 725 ILCS 5/107A-5 (West 2010). Defendant bears the burden of proving that a pretrial identification was impermissibly suggestive. *People v. Brooks*, 187 Ill. 2d 91, 126 (1999). Even where a defendant meets this burden, the State may show by clear and convincing evidence that the identification was based on the witness' independent recollection. *Id.* Where, as here, an ineffectiveness claim is based on trial counsel's failure to

file a motion to suppress, a defendant must establish that the unargued motion is meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. *People v. Henderson*, 2013 IL 114040, ¶ 15.

¶ 82 Here, defendant argues that both the photo array and the lineup were unduly suggestive. As to the photo array, he complains that his photograph alone included the words "sentencing information" at the bottom, and he appears to be wearing an Illinois Department of Corrections light blue jumpsuit. We disagree. Two words appear at the bottom of defendant's photograph. Although they appear to state, "sentencing information," those words are cut in half horizontally and barely legible. More importantly, given their placement, the words do not clearly correspond to defendant's photograph. The photographs also do not support defendant's contention that he "appeared to be wearing" an Illinois Department of Corrections jumpsuit; defendant's photograph only depicts his head down to the top of his shoulders. In all, the six photographs in the photo array are quite similar, each representing a black male with nearly the same build and slight facial hair. The photo array provided little grounds for a motion to suppress.

¶ 83 The lineup is more problematic. Physically, the four lineup participants are fairly similar–all black males of roughly the same build, hair, facial hair, and clothing. However, defendant wore a brown parka, while the other three participants wore black jackets. The State presented evidence that the offender in both the Jokubaitis and Schenck cases wore a brown jacket. At trial, Evans testified that she identified defendant based in part on his jacket:

> "Q. [W]hat did you recognize about the person you identified?
>
> A. All his face, because I did see his face, and then also he was wearing the very same jacket he wore on that day.
>
> Q. This brown parka he has in the picture, that is the same coat he had on the day he robbed Mrs. Schenck?
>
> A. Yes."

Defendant argues that this unduly suggestive lineup placed a spotlight on defendant.

¶ 84 Even though the lineup procedures may have been suggestive, there was strong evidence in this case that Evans identified defendant based on her own independent recollection. See *People v. McTush*, 81 Ill. 2d 513, 520 (1980) ("While it is the defendant's burden to establish that the pretrial confrontation was impermissibly suggestive [citation], once accomplished, the State may nevertheless overcome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime." (Internal quotation marks omitted.)). When evaluating identifications, Illinois courts look to (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the victim upon identification; and (5) the length of time between the crime and the identification. *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

¶ 85 Here, Evans had ample opportunity to observe defendant, even speaking to him before he fled. At one time, Evans stood face-to-face with defendant, only 7 or 10 feet away. She later identified defendant in the nonsuggestive photo array before identifying him in the lineup. In

commenting on the lineup procedures, Evans stated that she first recognized defendant's face. Given Evans' prior observation and identification of defendant, we cannot say that there is a reasonable probability that the trial outcome would have been different had the suggestive lineup identification been suppressed. *Henderson*, 2013 IL 114040, ¶ 15. Accordingly, we reject defendant's ineffective assistance of counsel claims.

¶ 86                                  Reasonable Doubt

¶ 87     Defendant contends that the State failed to prove him guilty beyond a reasonable doubt. The State must prove each element of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *In re Winship*, 397 U.S. 358, 361-64 (1970). Where a defendant alleges on appeal that the State failed to meet this burden, a reviewing court, considering the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *Jackson*, 443 U.S. at 318-19. We must carefully examine the evidence, while considering that the trier of fact saw and heard the witnesses. *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

¶ 88     Defendant argues that the State failed to prove him guilty beyond a reasonable doubt because its case relied on unduly suggestive identifications and inadmissible other-crimes evidence. Defendant's argument merely reframes the issues we addressed above. Viewed through the lens of reasonable doubt, the result here is the same. Considering the evidence in the light most favorable to the prosecution, we believe a rational trier of fact could have found defendant guilty beyond a reasonable doubt. As we stated above, there was strong evidence in this case that Evans identified defendant based on her own independent recollection. As we have found Evans' identification of defendant to be reliable, that evidence is alone sufficient to sustain defendant's conviction. *Slim*, 127 Ill. 2d at 307. The properly admitted *modus operandi* evidence in this case bolstered Evans' identification of defendant. We find that sufficient evidence was presented to affirm defendant's conviction.

¶ 89                                   CONCLUSION

¶ 90     Based on the foregoing, we affirm defendant's conviction and sentence.

¶ 91     Affirmed.